## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **BOARD OF TRUSTEES OF THE OHIO LABORERS BENEFITS,** : | |
| : | |
| Plaintiff, : | Case No. 2:22-CV-2799 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| **OLIVE LEAF LANDSCAPING, INC.** : | Magistrate Judge Chelsey M. Vascura |
| : | |
| Defendant. : | |
| : | |

### OPINION & ORDER

This matter is before this Court on Plaintiffs Board of Trustees of the Ohio Laborers Benefits' ("Ohio Laborers") Motion for Default Judgment. (ECF No. 16; 17). For the reasons stated more fully below, Plaintiff's Motion is **GRANTED in part** and **HELD IN ABEYANCE in part**. (ECF No. 16; 17).

### I. BACKGROUND

Plaintiffs are fiduciaries of three multi-employer employee benefit plans ("the Plans" and one labor-management cooperative trust: (1) the Ohio Laborers' District Council – Ohio Contractors' Association Insurance Fund; (2) the Laborers' District Council and Contractors' Pension Fund of Ohio; (3) the Ohio Laborers' Training and Apprenticeship Fund; and (4) the Ohio Laborers' District Council – Ohio Contractors' Association Cooperation and Education Trust. (ECF No. 1 at 2). The Plans are affiliates of the Laborers' International Union of North America ("Union"). (ECF No. 17 at 2). On behalf of the Plans, Plaintiffs are also obligated to collect contributions on behalf of three national labor-management cooperative trusts known as the LIUNA Tri-Funds. (*Id.*).

Defendant Olive Leaf Landscaping, Inc. ("Olive Leaf") and the Union are signatories to the National Pipeline Agreement and the National Distribution Agreement ("the Agreements")—collective bargaining agreements ("CBA") covering work in Ohio, Kentucky, and West Virginia. (*Id.*). Defendant Olive Leaf employs laborers that are covered by the Agreements. (*Id.* at 3). Pursuant to the Agreements and the Plans, Defendant is "obligated to file monthly contribution reports, permit audits of its financial records, and make hourly contributions" to the Plans and the LIUNA Tri-Funds by the fifteenth day of each month and based on a specified rate. (*Id.*). When an employer, like Defendant, fails to remit required contributions timely, Plaintiffs are authorized to conduct an audit of Defendant's financial records and collect delinquent contributions and liquidated damages from Defendant. (*Id.*).

On July 14, 2022, Plaintiffs filed a Complaint seeking an audit of Defendant's financial records from January 2020 through December 2021. (ECF No. 1 at 1). Upon completion of the audit, Plaintiff also sought delinquent contributions, interest attributed to the delinquent contributions, and liquidated damages. (*Id.*). Finally, Plaintiff sought an order from this Court: (1) enjoining Defendant from further breach of ERISA and the terms of the plan documents; and (2) enforcing the terms of the plan documents and ERISA. (*Id.*). Plaintiff alleges that prior to filing this lawsuit, it made numerous attempts to obtain access to Defendant's payroll records between April 2022 and July 2022. (ECF No. 17 at 3–4). Plaintiffs state that after filing the present lawsuit, Defendant permitted an audit of its payroll, during which the auditor discovered that Defendant had failed to make timely contributions between January 2020 and October 2022. (*Id.*),

Even though Defendant permitted an audit and was served the Summons on July 20, 2022 (*see* ECF No. 4), Defendant failed to appear in a timely manner. Upon Plaintiffs' application, on October 28, 2022, the Clerk's Officer issued an Entry of Default. (ECF Nos. 7; 8). On March 31,

2

2023, Plaintiffs filed a Motion for Default Judgment (ECF Nos. 16; 17) for a sum certain of $7,703.21. (ECF No. 17 at 1). Defendant failed to respond, and this matter is now ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs defaults and default judgments. The first step is entry of default. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default is entered, a party may take the second step by moving for default judgment. Fed. R. Civ. P. 55(b). At that stage, "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Arthur v. Robert James & Assocs. Asset Mgmt., Inc.*, No. 3:11-cv-0460, 2012 WL 1122892, at *1 (S.D. Ohio Apr. 3, 2012) (internal quotation marks omitted).

Once default is entered, the defendants are treated as having admitted to the complaint's well-pleaded allegations. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006). That said, "[a]n entry of default does not automatically entitle the plaintiff to a default judgment." *Methe v. Amazon.com.dedc, LLC*, No. 1:17-cv-0749, 2019 WL 3082329, at *1 (S.D. Ohio July 15, 2019). "The plaintiff must still show that, when all of the factual allegations in the complaint are taken as true, the defendant is liable for the claim(s) asserted." *Id.*; *see also F.C. Franchising Sys., Inc. v. Schweizer*, 2012 WL 1945068, at *3 (S.D. Ohio May 30, 2012) ("[I]t remains for the district court to consider whether the unchallenged facts constitute a cause of action, since a party in default does not admit mere conclusions of law." (quoting *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010))).

When considering whether to enter default judgment, the Sixth Circuit instructs courts to consider the following factors:

3

> (1) possible prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) possible disputed material facts; (6) whether the default was due to excusable neglect; and (7) the preference for decisions on the merits.

*Russell v. City of Farmington Hills*, 34 Fed. App'x 196, 198 (6th Cir. 2002) (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990); and *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193–94 (6th Cir. 1986)). The Court will address these factors in a slightly different order, beginning with the sufficiency of the Complaint and the merits of the claims.

Finally, allegations relating to the amount of damages suffered are "ordinarily not accepted as true unless the amount claimed is capable of ascertainment from definite figures contained in detailed affidavits." *Iron Workers Dist. Council of S. Ohio & Vicinity Ben. Tr. v. Elite Iron Servs. L.L.C.*, No. 3:13-cv-0154, 2013 WL 4520256, at *1 (S.D. Ohio Aug. 26, 2013) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir.1983)).

## III. LAW & ANALYSIS

### A. Sufficient and Meritorious Claim (Factors One and Three)

Plaintiffs bring their claims under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act ("LMRA"). (ECF No. 1, ¶¶ 17, 20–21). An employer that is a signatory to a collective bargaining agreement violates ERISA if it fails to make contributions to employee plans in accordance with the terms and conditions of that agreement. 29 U.S.C. §1145; *see Iron Workers Dist. Council of S. Ohio & Vicinity Benefit Tr. v. ALW Constr. LLC*, No. 3:18-cv-0114, 2019 WL 4170211, at *2 (S.D. Ohio Sept. 3, 2019). Similarly, those acts may state a claim for breach of contract between an employer and a labor organization, cognizable under LMRA. 29 U.S.C. § 185(a).

4

Taking the factual allegations as true, this Court finds that the Complaint states sufficient and meritorious claims against Olive Leaf. The Complaint alleges that Olive Leaf is a signatory to the Agreement and is bound by its terms. (ECF No. 1, ¶¶ 7–8, 14–18). In turn, the Agreements bind Olive Leaf to the terms of the Plans, which require Olive Leaf to remit contributions to the Plans, file monthly contribution reports, and permit audits of its records. (*Id.* at ¶ 7–9). As alleged in the Complaint, Olive Leaf failed to make its required contributions beginning in January 2020. (*Id.*, ¶ 11; ECF No. 17 at 3–4). The Complaint also states that as of the date of its filing, July 14, 2022, Olive Leave had not made payments or permitted Plaintiffs' auditors access to Defendant's financial records. (ECF No. 1, ¶ 13). Thus, the Complaint states valid claims under ERISA and LMRA for the period of January 2020 to October 2022—the period during which the audit discovered Olive Leaf had failed to make timely payments. This factor weighs in favor of default.

### B. Prejudice to Plaintiff (Factor Two)

Plaintiff likely will be prejudiced if its Motion is denied. Plaintiff filed this suit over a year ago (*see* ECF No. 1), and still they remain without relief. To deny default judgment would render Plaintiff's effort at a civil resolution futile, while rewarding Olive Leaf's avoidance of this litigation. Moreover, were Plaintiff to file another lawsuit, all indications are that they would return to this stage—default judgment—because Olive Leaf has failed to appear despite its alleged knowledge of the lawsuit. Courts find the prejudice factor to be satisfied under such circumstances. *See, e.g.*, *Toler v. Glob. Coll. of Nat. Med., Inc.*, No. 13-10433, 2016 WL 67529, at *7 (E.D. Mich. Jan. 6, 2016), *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, F. Supp. 2d 916, 920 (C.D. Cal. July 19, 2010), *Gunn Pacific Reflection LLC v. Johnsen*, No. 2:18-CV-6842, 2019 WL 2501476, at *2 (C.D. Cal. July 17, 2019), *J & J Sports Productions, Inc. v. Gonzalez Brothers, Inc.*, No. 2:17-CV-2356, 2021 WL 5771122, at *2 (D. Nev. Dec. 3, 2021).

### C. Amount of Money at Stake (Factor Four)

Next, the Court considers the amount of money at stake. Plaintiffs request a total award of $7,703.21. This total is on the lower end of the spectrum for typical federal cases, and the Court has identified several other cases from this District granting default judgments in greater amounts on similar claims. *See, e.g., Cincinnati Children's Hosp. Ret. Plan v. Wall*, No. 1:19-cv-0831, 2020 WL 5797916, at *4 (S.D. Ohio Sept. 29, 2020) (awarding over $35,000); *Iron Workers Dist. Council of S. Ohio & Vicinity Ben. Tr. v. Elite Iron Servs. L.L.C.*, No. 3:13-cv-0154, 2013 WL 4520256, at *2 (S.D. Ohio Aug. 26, 2013) (awarding over $160,000); *Iron Workers Dist. Council of S. Ohio & Vicinity Ben. Tr. v. Hoosier Steel, Inc.*, No. 3:11-cv-458, 2012 WL 1122809, at *4 (S.D. Ohio Apr. 3, 2012) (awarding over $300,000); *GCIUEmp'r Ret. Fund v. S. Rosenthal & Co.*, No. 1:08-cv-0416, 2009 WL 238792, at *1 (S.D. Ohio Jan. 29, 2009) (awarding over $40,000). Accordingly, the Court will treat this factor as favoring default judgment.

### D. Possible Disputed Material Facts (Factor Five)

As for the possibility of disputed material facts, Olive Leaf has given this Court nothing to evaluate; it has not participated in this case in any capacity. Olive Leaf failed to respond by the pleading deadline, at which point it "forfeited [its] right to dispute any of Plaintiff[s'] allegations by not answering the Complaint." *Tomlinson v. E. Recovery & Remediation Grp., LLC*, No. 15-13606, 2019 WL 1380313, at *4 (E.D. Mich. Mar. 27, 2019). Given the over yearlong silence from Olive Leaf and the fact that it permitted an audit of its records, it seems unlikely it would dispute the factual allegations even if provided the opportunity. Thus, this factor weighs in favor of default judgment.

### E. Default Due to Excusable Neglect (Factor Six)

It is not apparent whether excusable neglect played a role in Olive Leaf's default in this case. Despite being properly served (*see* ECF No. 4), Defendant never made an appearance or filed a response to the Complaint. Its reasons are unknown, so the Court treats this factor as neutral.

### F. Preference for Decision on the Merits (Factor Seven)

Finally, the Court must consider "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1472. Inevitably, this factor is in tension with default judgment. When trial on the merits is not attainable, however, courts recognize that this policy preference must yield to the needs of litigants actually before them. *See, e.g.*, *Toler*, 2016 WL 67529, at *9 ("[W]hile public policy favors resolution of cases on the merits, Defendants and their Counsel have consistently ignored opportunities for a merits-based resolution by refusing to respond in this matter . . . . 'Effective judicial administration requires that at some point disputes be treated as finally and definitively resolved.'" (quoting 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2693 (3d ed.))). Since no other factors disfavor default judgment, and since a decision on the merits is neither realistic nor attainable in this case, policy preferences will not preclude Plaintiffs' requested relief.

Because all of the factors weigh in favor of default judgment, Plaintiffs' Motion (ECF No. 16; 17) is **GRANTED**.

### IV. DAMAGES AND FEES

Having found default judgment proper, the Court next must determine the appropriate measure of damages. Rule 55(b)(2) permits the Court to conduct an evidentiary hearing to determine damages, but it does not require one. *See Vesligaj v. Peterson*, 331 Fed. App'x 351, 354– 55 (6th Cir. 2009) (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir.

7

1989)). If damages are calculable or liquidated, then the court may forego an evidentiary hearing because the facts establishing damages are not distinct from the facts establishing liability. *See United States v. Di Mucci*, 879 F.2d 1488, 1497–98 (7th Cir. 1989); *Barnes v. Abraham, Inc.*, No. 2:17-cv-279, 2017 WL 5714091, at *2 (S.D. Ohio Nov. 28, 2017) ("A court may determine damages without holding an evidentiary hearing if the damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." (internal quotation marks omitted)). On the other hand, "[w]here damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (internal quotation marks omitted).

In their Motion, Plaintiffs seek four forms of monetary damages: liquidated damages from Olive Leaf for failing to make timely payments, interest on the late payments, court costs, and reasonable attorneys' fees. (ECF No. 17 at 1).

### A. Liquidated Damages and Interest

ERISA § 502 specifies the awards available in cases involving delinquent contributions. Where "a judgment in favor of the plan is awarded, the court shall award" the following:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). "The language of Section 1132(g) is mandatory." *Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 388 (6th Cir. 1991).

8

Plaintiffs have failed, however, to prove liquidated damages and interest sufficiently. Plaintiffs cite to an affidavit from the Communications and Contractor Relations Manager for Plaintiffs. While the affidavit of an employee responsible for monitoring employer contributions to benefit plans would typically be sufficient proof of damages calculations, *see Detroit Carpenters Fringe Benefits Funds v. Northwest Acoustical, Inc.*, 2021 WL 764126, at *1 – 2 (E.D. Mich. Feb. 26, 2021) (finding plaintiff had proven sufficient damages by submitting two affidavits from an auditor and lawyer which demonstrated the manner in which Plaintiffs calculated proposed damages); *Iron Workers Dist. Council of S. Ohio*, 2013 WL 4520256, at *2 (finding specific monetary damages requested were sufficiently supported by sworn affidavit from employee responsible for monitoring employer contributions to trusts), the affiant alleges that the governing documents require a 10% charge imposed on delinquent contributions plus 1% per month on the late contributions, but do not cite those governing documents. (ECF No. 17-1, ¶¶ 13–16). A review of the exhibits included in Plaintiffs' briefing also fails to turn up any references to the percentages used to calculate damages and interest. While Plaintiffs include citations to portions of the Agreement that authorize Plaintiff to take appropriate action to collect delinquent contributions, including interest, there is no reference to the 10% and 1% interest proposed. (*See* ECF No. 17, Ex. 2, National Pipeline Agreement, Article XVII, p. 20; Ex. 4, National Distribution Agreement, Article XII, p. 14, Addendum E, p. 40.).

This Court has previously approved liquidated damages and interest awards where the moving party provides the documentation to support its calculations. *See Trustees of the Plumbers' and Pipefitters' Local 162 Pension Fund, et al.*, Case No. 2:21-cv-5612, ECF No. 1-3 (exhibit from governing documents explaining the exact percentages used to calculate damages from

9

delinquent employer contributions to employee benefit funds). Here, Plaintiffs fail to provide the necessary documentation to support the calculation of the liquidated damages and interest.

### B. Attorneys' Fees and Costs

ERISA also entitles a prevailing plaintiff to reasonable attorney's fees and costs as determined by the district court. 29 U.S.C. § 1132(g)(2)(D). The award is mandatory. *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1400 (6th Cir. 1995). The court determines the fee amount using the "lodestar" method, which begins by calculating "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Id.* at 1401 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). If both inputs are reasonable, then "the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (citing *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986)).

A court should look to "evidence supporting the hours worked and rates claimed," *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1208 (6th Cir. 1992) (quoting *Hensley*, 461 U.S. at 433), and should assess the "prevailing market rate in the relevant community." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (emphasis removed) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "The prevailing market rate can be demonstrated in a number of ways, including, affidavit, fee award studies, citations to prior precedent regarding reasonable rate adjudications, and the court's own expertise in recognizing reasonable applicable prevailing rates." *Ohio & Vicinity Carpenters' Fringe Ben. Funds, Inc. v. BCS Contractors, Inc.*, No. 5:12-cv-1565, 2015 WL 710955, at *2 (N.D. Ohio Feb. 18, 2015).

Plaintiffs' Counsel, Ryan K. Hymore, submitted a Declaration supporting the requested attorneys' fees. (ECF No. 17-6). Mr. Hymore expended thirteen (13) hours in this suit, at hourly

rates of $350, for a total of $4,550 in attorneys' fees. (*Id.*, ¶ 3–5). Plaintiffs' Counsel, however, only seeks $3,549 in attorneys' fees which is approximately 78% of the lodestar, or an hourly rate of $273. (*Id.*, ¶ 5). The Court finds the hours expended were reasonable and necessary to investigate the claim, file the case, and obtain default judgment. In addition, the billing rates are at or below those deemed reasonable for comparable work in similar matters.[1] Accordingly, Plaintiffs are entitled to reasonable attorney's fees in the requested amount of $3,549.00.

Finally, Plaintiffs are entitled to costs in the amount of $409.82 for the court filing fee and cost of certified mail for service of the Complaint and Summons.

## V. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Default Judgment is **GRANTED in part and HELD IN ABEYANCE in part**. A **DEFAULT JUDGMENT** is entered against Defendant Olive Leaf, and attorneys' fees of $3,549.00 and costs of $409.82 are awarded to Plaintiff for a total of $3,958.82. Plaintiffs are **ORDERED to** file supplemental briefing addressing this Court's concern regarding the requested liquidated damages and interest for this Court's consideration within **seven (7) days** of the date of this Order.

**IT IS SO ORDERED.**

                                                                      
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: November 20, 2023**

---

[1] *See, e.g.*, *Cincinnati Children's Hosp. Ret. Plan*, 2020 WL 5797916, at *4 ($545 for partner and $270 for associate); *Bd. of Trs. of Ohio Laborers' Fringe Benefits Programs v. Dan Ray Constr.*, 2018 WL 2435184, at *2 (S.D. Ohio May 30, 2018) ($280 for attorney).